1  James A. McDevitt
   United States Attorney
2  Eastern District of Washington
   Stephanie A. Whitaker
3  Assistant United States Attorney
   Matthew Magliaro
4  Legal Intern
   Post Office Box 1494
5  Spokane, WA 99210-1494
   Telephone: (509) 353-2767

6

```
                          FILED IN THE
                        U.S. DISTRICT COURT
                   EASTERN DISTRICT OF WASHINGTON

                        FEB 2 6 2007

                   JAMES R. LARSEN, CLERK
                                      DEPUTY
                     SPOKANE, WASHINGTON
```

7              UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF WASHINGTON
8

9  UNITED STATES OF AMERICA,          )
                                      )
10              Plaintiff,            )
                                      )      CR-06-87-LRS
11        vs.                         )
                                      )      SUPERVISED DEFERRED
12  BOB B. MCKENZIE,                  )      PROSECUTION
                                      )      AGREEMENT
13              Defendant.            )
                                      )
14

15        Plaintiff, United States of America, by and through James A. McDevitt,

16  United States Attorney for the Eastern District of Washington, Stephanie A.

17  Whitaker, Assistant United States Attorney for the Eastern District of Washington,

18  Matthew Magliaro, Petty Offense Legal Intern, and Defendant BOB B.

19  MCKENZIE, and the Defendant's counsel, Gina Costello, agree to the following

20  Supervised Deferred Prosecution Agreement:

21        1.    Factual Background:

22        The Defendant, BOB B. MCKENZIE, is reported to have committed an

23  offense against the United States on or about May 19, 2006, by forcibly assaulting

24  two uniformed Federal Protective Service guards and by resisting lawful arrest by

25  two United States Marshals and two Federal Protective Service guards, who were

26  performing their official duties at the time of this incident, in violation of 18

27  U.S.C. §§ 111(a)(1), 1114. 18 U.S.C. 111(a)(1) states that a person who "forcibly

28

- 1

McKenziedeferredpros.wpd

1 assaults, resists, opposes, impedes, intimidates, or interferes with any person

2 designated in section 1114 of this title while engaged in the performance of

3 official duties" is subject to criminal sanctions of up to a year in jail, fined, or both

4 "where the acts in violation of this section constitute only simple assault."

5       On May 19, 2006, at approximately 9:20 a.m., the Defendant entered the

6 Thomas Foley United States Courthouse building at 920 West Riverside in

7 Spokane, Washington. This building is federal property and subject to the laws of

8 the United States. The Defendant made contact at the entrance with uniformed

9 officers of the United States Marshal Service who were operating the

10 Magnotometer, a walk-through metal detector used at the entrance/front lobby of

11 the federal building to maintain court security. The Defendant showed his

12 Washington State drivers license to Court Security Officer Handy. Court Security

13 Officer Patricia Madsen of the United States Marshal's Service asked the

14 Defendant to place his wallet and watch with a metal band in a plastic bin before

15 he stepped through the Magnotometer. The Defendant was immediately hostile

16 about having to go through the security screening. In violent movements, he took

17 off a necklace, a coin purse and other objects from his pocket and threw them into

18 the plastic bin. The Defendant went through the Magnotometer, which did not

19 alert to the presence of metals. As the Defendant gathered his things at the far end

20 of the conveyer belt after they had been run through the X-Ray machine, the

21 Defendant commented, "I hope this place gets blown up."

22       Deputy United States Marshals (hereinafter DUSM) Hank G. Shafer and

23 Shawn Langley responded. DUSM Shafer in his report advised that he and Shawn

24 Langley went to the lobby to get personally identifying information from the

25 individual, attempt to clarify the individual's comments, and possibly escort him

26 from the building if he was uncooperative. DUSMs Shafer and Langley made

27 contact with CSO Madsen, who advised that an individual currently in the IRS

28 office had made threats in the front lobby about his hope that the federal building

- 2

McKenziedeferredpros.wpd

1  would be blown up. In the hallway near the IRS Office, Federal Protective Service
2  Officer Alvin Rivera made contact with DUSMs Shafer and Langley, who
3  informed Rivera of the situation.  Officer Rivera was in uniform and on duty at
4  this time.

5          The officers made contact with the Defendant in the IRS offices.  DUSM
6  Shafer asked the Defendant to accompany him out in the hall because he needed to
7  talk to him.  In the hall, DUSMs Shafer and Langley stood with their backs
8  towards the IRS office facing the Defendant, who had his back to the rear wall.
9  Officer Rivera was behind the Defendant.  Federal Protective Services Officer
10  Brian E. Donnell responded to the area and joined DUSMs Shafer and Langley
11  facing the Defendant.  Officer Donnell was in full uniform and on duty.  DUSM
12  Shafer advised the Defendant that he understood there was a problem with the
13  CSO's at the front lobby.  The Defendant became belligerent and hostile.  The
14  Defendant stated, "Fuck you! I'll do whatever I want!  I have nothing to live for!"
15  DUSM Shafer asked the Defendant to calm down.  The Defendant then threw the
16  forms he received from the IRS at DUSM Shafer, telling him to "hold it."

17          After producing his driver's license, the Defendant took out a change purse
18  from his pocket and stated to Shafer, "I have a quarter I would like to give you, it
19  is all I have."  The Defendant stated that he had a quarter for Shafer to call
20  someone who cares.  Shafer told the Defendant that he did not want his money.
21  The Defendant then turned and threw the quarter at Langley.  The quarter hit
22  Langley in the face just below the right eye and bounced off his chest.  Shafer then
23  told the Defendant to pick up the quarter he threw on the ground.  The Defendant
24  responded, "I did not throw the quarter on the ground."  Shafer responded, "No,
25  you threw it at a Deputy Marshal."  The Defendant was advised at this point that
26  he was being arrested for assaulting a Deputy Marshal.

27          Officer Rivera, who was still behind the Defendant, observed the Defendant
28  push both Langley and Shafer forward.  FPS Officer Rivera then grabbed the

- 3

1   Defendant's right arm, with FPS Officer Donnell and DUSM Langley grabbing the

2   left arm.  The Defendant then threw himself back and to the left of the officers and

3   lunged forward.  The Defendant, with his right hand, grabbed onto Officer

4   Donnell's shirt around up by the neckline/collar.  Officer Donnell attempted to use

5   pressure points on the webbing and upper part of the hand to release the

6   Defendant's grip on his shirt.  As the Defendant began to fall to the ground, he

7   attempted to throw Officer Donnell underneath him so as to break his own fall.

8   The Defendant pulled Officer Donnell into the wall.  Officer Donnell's left

9   shoulder hit the wall along with the Defendant's head.  The struggle was then on

10   the floor.

11       The Defendant kicked Officer Donnell on his right collarbone.  Officer

12   Donnell grabbed the Defendant's right thumb and bent it back in order to release

13   his grip on Officer Donnell's shirt collar.  The Defendant ripped the buttons off

14   Officer Donnell's uniform shirt while kicking Officer Rivera at that same time.

15   Officer Rivera sustained a bruise on his leg from this kick.  Officer Donnell

16   advised in his report that he experiences lasting numbness and pain in his left

17   shoulder and arm.

18       The Defendant was repeatedly advised by DUSM Shafer and Langley to

19   comply and to stop resisting arrest.  He did not comply with any of the verbal

20   commands given to him and was combative during the entire process.  The

21   Defendant was handcuffed and taken to the United States Marshal Service

22   Holding cell, where he was later released.

23       On August 15, 2006, Special Agent Scott Hunt of the U.S. Department of

24   Homeland Security contacted the Defendant at the Defendant's private residence

25   for the purpose of interviewing him about the incident on May 19th.  The

26   Defendant acknowledged in the interview that he told CSO Madsen that someone

27   should blow the federal building up.  The Defendant stated that he was mad about

28   all the security screening requirements and that it had 'ticked' him off that he had

- 4

1  to empty his pockets.  The Defendant stated that he felt the DUSM Shafer and

2  Langley treated him rudely in the IRS office and recalled that he was "really

3  pissed off by those two snot nosed punks."  SA Hunt asked the Defendant if he

4  recalled throwing a quarter at one of the Marshals.  The Defendant laughed and

5  recalled that he remembered "flicking" a quarter at one of the Marshals and telling

6  them to call someone that gave a shit.  The Defendant stated that he knew the

7  Marshals were trying to arrest him but that he was angered by the way they talked

8  to him and that he "wasn't going down easy."  The Defendant stated that he fought

9  against the officers the best he could and didn't care what they did because he

10  wasn't going to let them win.

11          SA Hunt asked the Defendant if he understood that his conduct was

12  considered resisting arrest and assault.  The Defendant responded by saying:

13  "Hell, I'm 75 years old.  I've had seven heart attacks and two open heart surgeries.

14  I've got a hot temper and those little punks pissed me off. I suppose I shouldn't

15  have done it but hell I don't expect to live much longer anyway."

16          After an investigation of the offense and the Defendant's background, it

17  appears that the interests of the United States, the Defendant's own interests, and

18  the interests of justice will be served by the following procedure.

19          On the authority of the Attorney General of the United States, by James A.

20  McDevitt, United States Attorney for the Eastern District of Washington,

21  prosecution in this District for this offense shall be deferred for a period of twelve

22  (12) months from the date of the filing of this agreement and thereafter dismissed,

23  provided the Defendant abides by the conditions and requirements herein outlined.

24          2.      Maximum Statutory Penalties:

25          The Defendant, BOB B. MCKENZIE, agrees to enter a supervised deferred

26  prosecution agreement for the three-count Information filed on August 25, 2006,

27  charging the Defendant with Assaulting, Resisting or Impeding a Federal Officer

28  and Resisting Arrest, in violation of 18 U.S.C. §§ 111(a)(1), 1114.

- 5

McKenziedeferredpros.wpd

1    The Defendant understands that the maximum statutory penalty for

2  Assaulting, Resisting, or Impeding a Federal Officer, a Class A misdemeanor, is

3  not more than a 1-year term of imprisonment; a fine not to exceed $100,000; not

4  more than a 1-year term of supervised release; restitution; and a $25.00 special

5  penalty assessment.

6    3.    Advice and Acknowledgment of Rights:

7    The Defendant, BOB B. MCKENZIE, understands and acknowledges that

8  he has the following rights:

9    (a).    The right to be represented by a lawyer at all hearings when the

10          government is seeking jail time.

11    (b).    The right to a jury trial;

12    (c).    The right to see, hear and question the witnesses;

13    (d).    The right to remain silent at trial;

14    (e).    The right to testify at trial;

15    (f).    The right to compel witnesses to testify.

16    (g).    That the Defendant is presumed innocent unless the charge(s)

17          against him are proved beyond a reasonable doubt, or if he

18          enters a plea of guilty.

19    (h).    The right to present evidence and a defense.

20    (I).    That the Defendant has the right to appeal a finding, after trial,

21          of guilty, if the Defendant has pled not guilty.

22    (j).    That if the Defendant proceeds to trial and is found guilty, the

23          Defendant may seek suspension of some or all of the fines and

24          costs, and incarceration that may be ordered, upon condition

25          that the Defendant seeks treatment, and further, that the

26          Defendant may seek treatment from public and private agencies

27          at any time without regard to whether or not the Defendant is

28          found guilty of the offense charged.

McKenziedeferredpros.wpd

By deferring prosecution on these charges, the Defendant, BOB B. MCKENZIE, understands that he is knowingly and voluntarily waiving certain constitutional rights, including: (a) speedy trial; (b) right to testify; (c) right to call and question witnesses; and (d) right to present evidence or a defense.  The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4.    Acceptance of Deferred Prosecution & Stipulation of Facts:

The Defendant, BOB B. MCKENZIE, having been advised of and acknowledging his rights, does:

(a).    Accept and agree to pursue and complete the terms and conditions of this supervised deferred prosecution;

(b).    Agrees to pay the costs of treatment, if any;

(c).    The Defendant understands that if he fails or neglects to comply with any part of the terms and conditions of the deferred prosecution, then the Court will hold a hearing to determine whether he should be removed from the deferred prosecution program.  After the hearing, the Court will either order that he continue the conditions of the deferred prosecution or be removed from deferred prosecution, at which point a judgment and conviction will be entered against the Defendant, BOB B. MCKENZIE.  If the Defendant is convicted of a similar offense during the deferred prosecution, the Court will revoke the deferred prosecution and enter a judgment and conviction against the Defendant.

(d).    The Defendant further agrees that if the Court revokes the order granting this Deferred Prosecution, the Defendant, BOB B. MCKENZIE, hereby stipulates and agrees to the admissibility of the facts contained above and in the written police report(s),

- 7

and any attachment thereto, their admissibility in evidence to be used to support a finding of guilt. The Defendant understands that by this process, the Defendant is giving up the Constitutional right to a trial, the right to hear and question witnesses, the right to call witnesses in his own behalf, the right to testify or not to testify, the right to present evidence or a defense, and the right to remain silent;

(e).   The Defendant understands that he is entitled to a trial that would determine his guilt or innocence. The Defendant understand before signing this Deferred Prosecution and Stipulation of Facts and waiver that the Defendant has the right to be represented by an attorney when the Government is seeking jail time. The Defendant does hereby voluntarily and with knowledge of the above rights waive his right to a trial of this case by the Court pursuant to paragraph four (d) above;

(f).   The Defendant further agrees to immediately report any violation of the below conditions to the United States Attorney's Office or to the United States Probation Office.

5.   Conditions of Supervised Deferred Prosecution:

The Defendant, BOB B. MCKENZIE, must abide by the following conditions and requirements within twelve (12) months of the effective date of this agreement:

1.   The United States and the Defendant agree that the Court impose a term of probation of one year, and to include the special conditions as recommended by United States probation, in addition to the standard conditions of probation. The Defendant agrees to be supervised by the United States

McKenziedeferredpros.wpd

1    Probation Office during the twelve (12) month period of

2    diversion.

3    2.    The Defendant pays the full amount of restitution and any fines

4    imposed by the Court.  Should the amount of restitution not be

5    agreed upon by the parties on or before February 26, 2007, the

6    Defendant stipulates and agrees to a restitution hearing before

7    this Court to determine the amount of restitution at a time to be

8    set by the Court.  The Defendant further stipulates and agrees

9    that the Court's determination of the amount of restitution at

10    that time is not grounds to revoke this agreement.;

11    3.    The Defendant is required to compose a written letter of

12    apology for his conduct, addressed to the two United States

13    Marshals and the two Federal Protective Services Officers.

14    This letter or letters must be received by the United States

15    Attorney's Office by the last day of the twelve (12) month term

16    of this agreement.

17    6.    Fines:

18    The Defendant hereby stipulates and agrees that upon entering this

19    Supervised Deferred Prosecution Agreement, the United States will still retain the

20    right to recommend an additional fine amount to the Court at the time this

21    agreement is entered into by the parties.   The United States and the Defendant are

22    free to make whatever recommendation concerning the imposition of a criminal

23    fine that they believe is appropriate.

24    The Defendant understands that the Court is not bound by and is under no

25    obligation to accept any recommendations made by the United States and/or by the

26    Defendant; that the Court may obtain an independent report and recommendation

27    from the U.S. Probation Office; and that the Court may, in its discretion, impose

28

1  any fine amount it deems appropriate up to the statutory maximums stated in this

2  Agreement.

3       7.    <u>Effect of Compliance</u>:

4       If the Defendant complies with all the rules, regulations, and conditions

5  mentioned in Section Five of this Agreement within the twelve (12) month time

6  period, no prosecution for the offense set out in the Factual Background section of

7  this Agreement will be instituted in this District, and the information filed on

8  August 25, 2006, will be dismissed by the United States.  However, should there

9  be a violation of the terms of this agreement and the Deferment is revoked, a

10  conviction for the underlying offenses will be imposed.  If a conviction occurs, the

11  Defendant understands that he will be subject to a re-sentencing which can include

12  up to the maximum punishment allowed by law.  The Defendant will be

13  supervised by the United States Probation Office during the twelve (12) month

14  period of diversion.

15       8.    <u>Integration Clause</u>:

16       The United States and the Defendant acknowledge that this document

17  constitutes the entire Supervised Deferred Prosecution Agreement between the

18  United States and the Defendant, and no other promises, agreements, or conditions

19  exist between the United States and the Defendant concerning the resolution of the

20  case.  This Agreement is binding only upon the United States Attorney's Office

21  for the Eastern District of Washington, and cannot bind other federal, state or local

22  authorities.  The United States and the Defendant agree that this agreement cannot

23  be modified except in a writing that is signed by the United States and the

24  Defendant.

25

26

27

28

McKenziedeferredpros.wpd

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for
the Eastern District of Washington.

James A. McDevitt
United States Attorney

_Stephanie A. Whitaker_                                    _1/18/07_

Stephanie A. Whitaker                                      Date
Assistant United States Attorney

_Matthew Magliaro_                                         _1/18/07_

Matthew Magliaro                                           Date
Petty Offense Legal Intern

I have read this Deferred Prosecution Agreement and have carefully
reviewed and discussed every part of the agreement with my attorney.  I
understand and voluntarily enter into this Agreement.  Furthermore, I have
consulted with my attorney about my rights, I understand those rights, and I am
satisfied with the representation of my attorney in this case.  No other promises or
inducements have been made to me, other than those contained in this Agreement
and no one has threatened or forced me in any way to enter into this Agreement.  I
understand the conditions of my Deferred Prosecution Agreement and agree that I
will comply with those conditions.

_Bob B. McKenzie_                                          _2-26-07_

BOB B. MCKENZIE                                            Date
Defendant


I have read the Deferred Prosecution Agreement and have discussed the
contents of the agreement with my client.  The Agreement accurately and
completely sets forth the entirety of the agreement between the parties.  I concur in
my client's decision to enter into this Agreement.  There is no legal reason why the

- 11

McKenziedeferredpros.wpd

1   Court should not accept the Defendant's Supervised Deferred Prosecution

2   Agreement.

3   _____ M. Costello _____                    2-26-07

4   Gina M. Costello                               Date

5   Attorney for the Defendant

6

7

8   Approved without passing judgment on the merits or wisdom of this diversion

9   _____                           2/26/07
    United States District Judge                   Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12